[Nowhere reported; opinion not now accessible.]

Circuit Court, D. Georgia.

[Cited in Alabama & C. R. Co. v. Jones, Case No. 127.]

---

### ALABAMA & C. R. CO., (BLAKE v.)

[See Blake v. Alabama & C. R. Co., Case No. 1,493.]

---

### ALABAMA & C. R. CO., (DAVENPORT v.)

[See Davenport v. Alabama & C. R. Co., Case No. 3,588.]

## Case No. 126.

### ALABAMA & C. R. CO. v. JONES.

[5 N. B. R. (1871,) 97.]

Circuit Court, S. D. Alabama.

BANKRUPTCY — JURISDICTION OF CIRCUIT COURT—AUTHORITY OF COUNSEL—SUFFICIENCY OF PETITION — REVIEW — CORPORATIONS — SERVICE OF PROCESS.

[1. The statement of counsel that they are authorized by a corporation to file a petition in the circuit court for a review of the proceedings in bankruptcy against the company in the district court, and to appear for the company in the circuit court, must be taken as conclusive evidence of their authority, in the absence of proof to the contrary.]

[2. Service of the petition for review in such case on the attorneys of the creditor on whose petition the proceeding below was begun is sufficient.]

[3. The fact that Act Cong. Feb. 6, 1839, (5 Stat. 315,) § 8, vests the district court for the middle district of Alabama with the jurisdiction of the circuit court, except in cases of appeal and writs of error, does not deprive the circuit court in that district of jurisdiction to review an adjudication in bankruptcy by the district court,—under the second section of the bankrupt act of 1867, giving the circuit court, within and for the district in which the proceeding in bankruptcy is pending, a general superintendence and jurisdiction of bankruptcy proceedings.]

[4. A railroad company is a "business corporation," within the bankrupt act of 1867, § 37, providing that such corporations may be adjudged bankrupt.]

[Cited in New Orleans, S. F. & L. R. Co. v. Delamore, 5 Sup. Ct. Rep. 1011, 114 U. S. 501; In re Pacific R. Co., Case No. 2,315; Winter v. Railway Co., Id. 17,890; Sweatt v. Boston & C. R. Co., Id. 13,684.]

[See, also, Adams v. Railroad Co., Case No. 47.]

[5. A petition for adjudication of bankruptcy against a railroad company, on the ground that it had fraudulently stopped payment of its commercial paper, which fails to aver, in the terms of the act, (section 39,) that the company was a "banker, broker, merchant, trader, manufacturer, or miner," is fatally defective; and where no proof of such facts is offered, the petition should be dismissed.]

[6. Provisions of the charter authorizing the company to erect and carry on machine shops, iron furnaces, rolling mills, etc., to manufacture materials for its equipment, do not constitute the company a "manufacturer," within the act.]

[7. A railroad company was chartered in each of the states of Tennessee, Georgia, Alabama and Mississippi. In proceedings in bankruptcy against it, in a district court in Alabama, an order to show cause was served by delivering a copy to the general superintendent of the company at Chattanooga, Tenn. Held, that the service was not sufficient, under section 40 of the bankrupt act of 1867, providing that "if such debtor cannot be found," or his place of residence ascertained, service shall be made by publication; the language "cannot be found" meaning "found," within the jurisdiction of the court. The service should have been by publication.]

[8. The fact that the railroad was chartered in the four states did not make it one corporate body on which service could be made at its residence in any one of those states.]

[Review of proceedings in the district court of the United States for the middle district of Alabama.]

[In bankruptcy. Petition by the Alabama & Chattanooga Railroad Company for review of a decree of the district court adjudicating the company bankrupt, on petition of William A. C. Jones. Decree reversed.]

WOODS, Circuit Judge. On the eighth day of June, eighteen hundred and seventy-one, the Alabama and Chattanooga Railroad Company was, on the petition of William A. C. Jones, adjudged a bankrupt by the district court for the middle district of Alabama, sitting in bankruptcy. This petition is filed to review and reverse that adjudication.

The facts, as developed by the pleadings and testimony, are these: the Alabama and Chattanooga Railroad Company is a railroad corporation created by the laws of Alabama. A corporation of the same name, and with the same board of directors and the same officers, is also chartered by each of the states of Georgia, Tennessee and Mississippi. The termini of the road are Chattanooga, Tennessee, and Meridian, Mississippi, and the road traverses the four states above named. The road passes through the counties of De-Kalb, Etowah, St. Clair and Jefferson, in the northern district of Alabama, and through the counties of Shelby and Tuscaloosa in the middle district, and Hale, Greene and Sumter in the southern district. The principal office of the company is at Chattanooga, Tennessee, and it has no principal office in the state of Alabama, nor does the president, or any of the directors, or the superintendent, reside in or keep any office of the corporation within the state of Alabama, nor have they or either of them been "found" within the middle district of the state of Alabama. The order to show cause directed to be served upon the corporation in the original proceedings was served, as shown by the affidavit of A. J. Walker, on June third, eighteen hundred and seventy-one, by L. B. Jones, deputy United States marshal for the eastern district of Tennessee, upon J. C. Stanton, in the office of the Alabama and Chattanooga Railroad Company, in Chattanooga, Tennessee, in which said office said Stanton was acting as the general superintendent of said railroad company, and he was at the time of such service the superintendent of said company, managing its affairs through its entire length, including the state of Alabama. The petition of William A. C. Jones, upon which the adjudication of bankruptcy was made, avers, among other things, that he is a creditor of the Alabama and Chattanooga Railroad Company, a corporation under the laws of the state of Alabama, which for a period of six months next preceding the date of the filing of the petition, had carried on business in the state of Alabama and the middle district thereof in its said corporate name; that the petitioner's demand against the company was a promissory note, dated Boston, December nineteen, eighteen hundred and sixty-eight, made by the Alabama and Chattanooga Railroad Company, for the payment of four thousand and ninety-seven dollars and seventeen cents, to the order of W. A. C. Jones, at the National Security Bank, Boston, two years after date; and that within six calendar months next preceding the date of the petition, the said company had committed an act of bankruptcy within the meaning of the bankrupt act, to wit: That said company, within the period aforesaid, and within said district, to wit: on the third day of January, eighteen hundred and seventy-one, being a corporation under the laws of the state of Alabama, and organized as a joint stock company and carrying on a moneyed business within the limits of said district, had fraudulently stopped or suspended, and had not resumed payment of its commercial paper within a period of fourteen days. Like averments are made as to two other notes of the company held by the petitioner, one for five thousand and sixty-six dollars, and the other for five thousand dollars. On the day upon which the order to show cause was returnable, the company made default, and was, upon proof of the service of the order to show cause made as before stated, adjudged a bankrupt, and Egbert H. Grandin and John F. Bailey, citizens of Alabama, were appointed temporary custodians of the property of the company, and were authorized and directed to take possession thereof. The petition of review states many grounds upon which a reversal of the decree of the bankrupt court is asked. In the view we take of the case it will be unnecessary to notice them all.

Some preliminary questions were raised on the hearing of the petition of review, which the court is required to pass upon.

1. The authority of counsel to file this petition and appear for the railroad company was denied. The counsel for the railroad company thereupon stated professionally that they were duly authorized by the company to institute and prosecute this proceeding. In our opinion this statement must be taken as conclusive evidence of the fact asserted, unless some proof to the contrary is shown. No such proof is offered, and this objection may be well considered as out of the way.

2. The service of the petition of review was made upon Walker and Murphy, who were of counsel for Jones in the original proceeding. It is objected that this is not sufficient; that as soon as the decree of bankruptcy was rendered the case was at an end, and their relation of attorneys ceased. It appears from the proof that an attempt to serve Jones with notice of the petition of review was made, but it is alleged the service was defective. We think the service upon the attorneys of Jones was sufficient. The proceeding in review is a part of the orig-

inal case, and for the purposes of the review the parties are still in court. "The proceeding in bankruptcy from the filing of the petition to the discharge of the bankrupt and the final dividend is a single statutory case or proceeding." York's Case, [Case No. 18,139.] The proceeding in review is intended to be speedy and summary. Reasonable notice to counsel accomplishes the ends of justice. If it were necessary to serve the party himself, he might defeat the reversal of the decree by avoiding service of notice, which it is alleged Jones in this case has attempted to do. The practice of serving the notice upon counsel is now well established in this circuit, and as no injustice can result from the practice, we are not disposed to change it. We consider the service upon counsel sufficient, and this objection is overruled. Even if the service were bad, it has been cured by the appearance of the defendant, Jones, and the filing of his answer to the petition of review.

3. It is suggested that in the middle district of Alabama, neither the circuit court nor a judge thereof has jurisdiction to review the proceeding of the district court for that district sitting in bankruptcy. This view is based upon the act of congress (5 Stat. 315, § 8) which provides that the district court for the middle district of Alabama, in addition to the ordinary jurisdiction and powers of a district court of the United States, shall, within the limits of said district, have jurisdiction of all causes except appeals and writs of error which now are, or hereafter may be, by law, made cognizable in a circuit court of the United States, and shall proceed therein in the same manner as a circuit court.

The fair construction of this act does not make the said district court a circuit court. It remains a district court, but with enlarged jurisdiction. It is not clothed with all the powers of a circuit court, for it is denied jurisdiction in cases of appeal and writs of error. This jurisdiction is necessary to make it a circuit court, as that term is used in the statutes of the United States. It can scarcely be claimed that the judge of the middle district sitting in the district court would have jurisdiction to review and reverse his own decree made as a bankrupt judge. The reasons are obvious. The power of review is conferred by the bankrupt act on the circuit court in term time, or a circuit judge in vacation. The district court of the middle district of Alabama is not a circuit court, nor is the judge thereof a circuit judge. He may sit as a judge in a circuit court, but that does not make him, especially in vacation, a circuit judge, as that term is used in the bankrupt act. Under the bankrupt act of eighteen hundred and forty-one it was held by the United States supreme court ([Nelson v. Carland,] 1 How. [42 U. S.] 265,) that upon questions

adjourned from the district to the circuit court, the district judge could not sit as a member of the circuit court, and consequently the points adjourned could not be brought before the supreme court by a certificate of division. If we are correct in these views, it follows that unless the circuit judge has jurisdiction in this case, the right of review is denied in cases of bankruptcy in the middle district of Alabama, and others where the district court has circuit court powers. The constitution of the United States authorizes congress to establish uniform laws on the subject of bankruptcies, and the bankrupt act of eighteen hundred and sixty-seven is entitled an act to establish a uniform system of bankruptcy throughout the United States. If we yield to the view that the revising jurisdiction conferred by the second section of the bankrupt act upon the circuit court and its judges does not apply to the middle district of Alabama, the law is not uniform, nor is the system uniform. Important remedies are denied to parties in the bankrupt court of this district which are conferred upon parties in other districts, and the bankrupt law is open to the constitutional objection that it is not uniform. We are constrained so to construe the law, if possible, as to make it conform to the constitution, and where two constructions are fairly open for adoption, the one which avoids constitutional objections must be preferred.

There is another view of this question which we think is conclusive. The second section of the bankrupt act provides that the several circuit courts of the United States within and for the district where the proceeding in bankruptcy shall be pending, shall have a general superintendence and jurisdiction, &c., and the powers and jurisdiction hereby granted may be exercised either by said court or by a justice thereof in term time or vacation. By the act of congress passed July third, eighteen hundred and sixty-six, (14 Stat. 209, § 2,) it is provided among other things that the districts of Georgia, Florida, Alabama, &c., shall constitute the fifth circuit. The district court which rendered the decree now under consideration is in the state of Alabama, and consequently within one of the districts comprising the fifth circuit, and therefore the circuit court and the judges thereof for the district of Alabama have by the terms of the bankrupt act jurisdiction of all cases and questions arising under the act, and may hear and determine them upon bill, petition, or other proper process. The objection to our jurisdiction in this case must be overruled.

This brings us to consider the grounds upon which a reversal of the decree adjudging the petitioner a bankrupt is sought. It is objected to the decree that a railroad company is not of such character as to be included within the provisions of the bank-

rupt act. The act, section 37, provides that its provisions shall apply to all moneyed, business or commercial corporations and joint stock companies; and that, upon petition of any officer of such corporation or company duly authorized thereto, or upon petition of any creditor of such corporation or company, made and presented in the manner provided in respect to debtors, the like proceedings shall be had and taken as are provided in the case of debtors. It is said on behalf of the petitioner that a railroad company is not a moneyed, business or commercial corporation. We cannot concur in this view. A corporation carrying on and pursuing any lawful business defined by its charter, and clothed with power to do so, for the sake of gain, is clearly a business corporation and amenable to the provisions of the bankrupt act. Rankin v. Florida, A. & G. C. R. Co., [Case No. 11,567.] The petitioner is authorized by its charter to construct a railroad and to convey thereon, for gain, passengers and freight. Its main and primary object is to do these things for gain. It is, therefore, a business corporation, as the term business is popularly understood. It seems to be the clear intent of the thirty-seventh section to bring within the scope of the bankrupt act all corporations, except those organized for religious, charitable, social, literary, educational, municipal or political purposes. These may all be in one sense, moneyed or business corporations, for they must all have and use money and transact business, to some extent, in order to carry out their objects. But we do not call them moneyed corporations as we would a bank, nor do we call them business corporations, as we would a manufacturing or mining company or express company, because their chief and primary object is not to transact business or make gain. They necessarily transact business in order to accomplish other ends than the mere doing of business and making profit. The building of a railroad is certainly carrying on a business. The transporting of passengers, mails and freight for hire is certainly a business, and a company organized to make gain from these pursuits as its chief and ultimate purpose is clearly a business corporation. The voluntary application of a railroad company to be adjudged a bankrupt would hardly be dismissed on the ground that it was not a business corporation. Adams v. Boston, H. & E. R. Co., [Case No. 47.]

But the petitioner says that admitting it to be a business corporation, it cannot be forced into involuntary bankruptcy on the ground that it has fraudulently stopped payment of its commercial paper, unless it is also averred and shown to be a banker, broker, merchant, trader, manufacturer or miner. In order to compel a corporation into involuntary bankruptcy under the clause of the thirty-ninth section, which this proceeding in bankruptcy is based upon, three things are necessary to be averred and proven. 1. That the corporation is a moneyed, business or commercial corporation. 2. That it is a banker, broker, merchant, trader, manufacturer or miner. 3. That it has fraudulently stopped payment, or has stopped and not resumed payment of its commercial paper for a period of fourteen days. A moneyed, business or commercial corporation may be forced into bankruptcy under the fifth clause of the twenty-ninth section, if it makes any assignment, gift, sale or conveyance, with intent to delay, defraud, or hinder its creditors; or under the eighth clause, if guilty of any of the acts therein specified, without being shown to be either a banker, broker, merchant, trader, manufacturer or miner. But where the proceeding is based on the ninth clause, as in this case, it is indispensable to aver and prove that the debtor sustained one of these characters. Has this been averred or proved in this case? The petition does not make any such averment, and is, therefore, fatally defective. Has this necessary fact been made out by the proof? The characters and powers of a corporation must be determined by its charter. A corporation authorized to carry on a banking business cannot construct or operate a railroad or carry on the business of a manufacturer or common carrier. A municipal corporation cannot, unless expressly authorized by its charter, carry on the business of a banker, miner or manufacturer.

A corporation is an artificial person, the creature of law. It has no powers except what are given by its incorporating act, either expressly or as incidental to its existence and its express powers. Beatty v. Knowler. 4 Pet. [29 U. S.] 152; Perrine v. Chesapeake & Del. Canal Co., 9 How. [50 U. S.] 172; Russell v. Topping, [Case No. 12,163;] Straus v. Eagle Ins. Co., 5 Ohio St. 59; City Council of Montgomery v. Plank Road Co., 31 Ala. 76; Brady v. Mayor of New York, 20 N. Y. 312; New London v. Brainard, 22 Conn. 552; Com. v. Erie & N. E. R. Co., 27 Pa. St. 339; Caldwell v. City of Alton, 33 Ill. 416; Smith v. Morse, 2 Cal. 524. No vote or act of a corporation can enlarge its chartered authority, either as to the subjects on which it is intended to operate or the persons or property of the corporators. Salem Milldam Corp. v. Ropes, 6 Pick. 23. A body corporate can only act in the mode prescribed by the law creating it. To enable its agents to bind the company, they must act pursuant to the incorporating act. [Head v. Providence Ins. Co.,] 2 Cranch, [6 U. S.] 166. Express powers granted a corporation must be exercised in the manner pointed out in the statute. Smith v. Eureka Flour Mills Co., 6 Cal. 1. The corporation in executing a public work cannot substitute its own more convenient mode of proceeding for that pointed out by its constituting statute. Reg. v. Manchester &

L. Ry. Co., 3 Q. B. 528. When a specific act is directed to be done by a particular agent of a corporation, it must be done by that agent. Maddox v. Graham, 2 Metc. [Ky.] 56.

These principles and authorities illustrate the rule applicable to the question in hand. If the Alabama and Chattanooga Railroad Company is a banker, broker, merchant, trader, manufacturer or miner, it must be made so by its charter. The company derives its powers and franchises from the act to charter the Wills Valley Railroad, passed by the general assembly of Alabama, and approved February third, eighteen hundred and fifty-two; the act to incorporate the Northeast and Southwest Alabama Railroad Company, passed by the same general assembly, and approved December twelfth, eighteen hundred and fifty-three; and an act, also passed by the general assembly of Alabama, relating to the Wills Valley Railroad Company and the Northeast and Southwest Alabama Railroad Company, approved November eighteenth, eighteen hundred and sixty-eight; which last named act authorized the purchase by the former company of the property and franchises of the latter. Said last named act also authorized the Wills Valley Railroad Company, after said purchase, to change its name to "The Alabama and Chattanooga Railroad Company;" and further provides that the Alabama and Chattanooga Railroad Company should exercise all the corporate authority and functions, rights and privileges of both the Northeast and Southwest Alabama Railroad Company and the Wills Valley Railroad Company. Therefore we must consult the charters of the two latter companies to ascertain the powers and franchises of the Alabama and Chattanooga Railroad Company. An inspection of these charters shows that neither of these companies was authorized to carry on the business of a banker, broker, merchant, trader or miner; and being neither by the law of its creation, it cannot be made such by any act of its officers, agents, or employes, or even by a vote of its board of directors. The twenty-second section of the act to incorporate the Northeast and Southwest Railroad Company provides, however, that "said company shall have power to erect and carry on machine shops, iron furnaces, foundries and rolling mills, and such other mechanical works as may be necessary, and to make, manufacture and furnish iron and other materials for the full equipment of the road, and to continue to make and manufacture the same under the provisions of this charter either for sale or their own use." Clearly this gives authority to the road to become a manufacturer—but this authority does not make the company a manufacturer unless it actually engages in the business of manufacturing. The business must also be carried on for the purpose of selling the products manufactured and not for the exclusive use of the company, to make it a manufacturer within the meaning of the bankrupt act. A planter who manufactures plows and other agricultural implements, or weaves cloth, as many do, for his own use and not for sale cannot be considered a manufacturer, nor can a railroad company that makes iron rails and cars for its own exclusive use, and not for sale, be deemed a manufacturer. It might do this under its general power to construct, equip and operate a railroad without any special grant for that purpose. If no mode is prescribed for the exercise of a power, the grant of which is clearly defined, the corporation may adopt such mode as in its judgment will secure the purpose contemplated. No proof was submitted to the bankrupt court nor has any been submitted to this court to show that the corporation chartered by the state of Alabama as the Alabama and Chattanooga Railroad Company has ever carried on the business of a manufacturer. Some proof was submitted to us, that in Chattanooga, Tenn., a railroad corporation known as the Alabama and Chattanooga Railroad Company has carried on the business of manufacturing iron rails and cars, but no attempt was made to show that the articles manufactured were for sale and not for the exclusive use of the company. The fair presumption is that this corporation is the one chartered by the state of Tennessee. It is not alleged in the petition filed in the district court that the Alabama and Chattanooga Railroad Company was either banker, broker, merchant, trader, manufacturer or miner, and no proof was offered showing that it was either. The inevitable conclusion is that the petitioner ought not to have been adjudicated a bankrupt upon the petition and proofs submitted to the judge of the district court.

We might leave the case here, but an interesting question of practice is raised which we will proceed to notice. The facts touching the charter of this railroad company by the four states of Tennessee, Georgia, Alabama and Mississippi, where its line runs, and where its principal office is, have already been stated. It has also already been stated how the order to show cause, issuing from the bankrupt court, was served. It is objected that this service was defective and void. The bankrupt act, section forty, prescribes how service shall be made in cases of involuntary bankruptcy. A copy of the petition and order to show cause shall be served on such debtor by delivering the same to him personally, or by leaving the same at his last or usual place of abode; or if such debtor cannot be found, or his place of residence ascertained, service shall be made by publication in such manner as the judge may direct. By the words "if such debtor cannot be found," we understood "if he cannot be found within the jurisdiction of the court." We do not understand that the debtor may

be served, or that the marshal is compelled to serve him in another jurisdiction, even when he knows precisely where he may be found. The words "not found" have a well settled technical meaning, and mean not found in the jurisdiction of the court. If no proper officer of this company could be found within the jurisdiction of the court, that did not authorize service out of the jurisdiction. In such case other modes of service must be resorted to. Service may be made at the last or usual place of residence of the debtor. Was the leaving of a copy of the order at the office of the debtor in Chattanooga, Tennessee, such a service as would bring the party into court? A corporation created by the laws of Alabama may carry on business in another state, but cannot be said to have a residence there. In Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519, held that "the legal person or entity known to the common law as a corporation, can have no legal existence out of the bounds of the sovereignty by which it is created; that it exists only by force of law, and that where that law ceases to operate the corporation can have no existence. It must dwell in the place of its creation." Can a corporation be said to have a last or usual place of residence in a place where it cannot exist? It has been held that a corporation created by the laws of one state, is not rendered liable to be sued by process served in another state, by the fact that it carries on business in this latter state, and that the process has been delivered to its officers and agents found therein. The bankrupt act requires that the petition shall be addressed to the judge of the judicial district in which such debtor has resided for the six months next preceding the time of filing the petition. If, therefore, it is claimed that the order to show cause was properly served by leaving a copy at the residence of the company in Chattanooga, Tennessee, it follows that the petition should have been filed in that district and addressed to the judge thereof. The fact that the Alabama and Chattanooga Railroad Company is also chartered by the state of Tennessee, as well as Georgia, Alabama and Mississippi, does not make it one corporate body, on which service could be made at its residence in any one of those states. In Ohio & M. R. Co. v. Wheeler, 1 Black, [66 U. S.] 297, the supreme court "held that a corporation cannot exist as one body under charters from two separate states. It has no legal existence in either state except by the law of the state, and neither state could confer on it a corporate existence in the other, nor add to or diminish the powers conferred. It may be composed of and represent, under the same corporate name, the same natural persons; but the legal entity or person which exists by force of law can have no existence beyond the limits of the state which brings it into life and endows it with its faculties and powers. The president and directors of the Ohio and Mississippi Railroad Company is therefore a distinct and separate corporate body in Indiana from the corporate body of the same name in Ohio." The result is that service was made neither personally nor at the last or usual place of residence of the debtor. As no other service was attempted, there has been no valid service.

It is said that unless the service made is held good there can be no service in this case. We do not so construe the law. Provision is made for service in just such case as this. If the debtor cannot be found, or his place of residence ascertained, service may be made by publication. It is certain that if the jurisdiction of the district court over this case can be maintained, the residence of the debtor is in this district. If the place of that residence cannot be ascertained, as if there is no office of the company within the district and it is uncertain or unascertained where the process should be left, and no person representing the corporation on whom service can properly be made, can be found in the district, then service by publication may and should be resorted to. We think it clear that service upon an officer of the corporation, out of the district and state and circuit, or service at the supposed residen of the corporation, also out of the district and state and circuit, is defective and invalid.

Whether this corporation has any residence at all in this district is a question which admits of debate, but the proof upon this point is meagre, and it is unnecessary to pass upon it.

The adjudication of bankruptcy in the bankrupt court was upon default of the debtor and upon a fatally defective petition. Even if the defect in the petition could be cured on this hearing by proof to establish the act of bankruptcy not averred in the petition filed in the bankrupt court, we think the proof submitted to us fails to show any act of bankruptcy on the part of the debtor. We are also of opinion that no sufficient service was made upon the debtor. For these reasons the decree of the district court for the middle district of Alabama, sitting in bankruptcy, adjudging the Alabama and Chattanooga Railroad Company a bankrupt, is reversed. The custodians appointed under said decree will deliver without delay all the property of said company which they have taken into possession by virtue of that decree, and the petition of William A. C. Jones to have said company adjudged as a bankrupt, will be dismissed at his costs.

[NOTE. A subsequent petition to the circuit court for review of another adjudication of bankruptcy afterwards made by the district court against the same company was dismissed. See Alabama & C. R. Co. v. Jones, Case No. 127.]