## BUFFALO RAPIDS IRRIGATION DISTRICT, APPELLANT, v. COLLERAN ET AL., RESPONDENTS.

(No. 6,493.)

(Submitted June 25, 1929. Decided July 13, 1929.)

[279 Pac. 369.]

*Messrs. Loud & Leavitt,* for Appellant, submitted a brief; *Mr. W. B. Leavitt* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, and *Mr. Rudolph Nelstead,* County Attorney of Custer County, for Respondents, submitted a brief; *Mr. S. R. Foot* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Buffalo Rapids Irrigation District brought action to quiet title to approximately 720 acres of land lying in Custer county and within the irrigation district. The complaint alleges that plaintiff acquired the land in question by tax deed in 1926, and that thereafter the county levied and imposed taxes upon the land for the year 1927; that all property belonging to the plaintiff, "including the lands and premises herein described, is exempt from taxation," but that the tax, "being of record, constitutes and is a cloud upon plaintiff's title."

The county interposed a general demurrer to the complaint, which demurrer was sustained by the court, and, the plaintiff refusing to plead further, judgment of dismissal followed. The plaintiff has appealed from the judgment.

It is agreed by counsel for plaintiff and defendant that only one question is involved, "viz.: Has Custer county the power to assess and levy a tax upon the land of the plaintiff, the plaintiff being an irrigation district organized under the laws

of the State of Montana?'' The answer to this question is to be found in our constitutional and statutory provisions on the subjects of irrigation districts and taxation.

Every irrigation district established under the laws of this state is declared to be a ''public corporation for the promotion of the public welfare'' (sec. 7169, Rev. Codes 1921), and the purpose of the irrigation district law is declared to be to secure the irrigation of the lands of the state, ''and thereby to promote the prosperity and welfare of the people'' (sec. 7262, Id.), i. e., a public purpose (*O'Neill* v. *Yellowstone Irr. Dist.*, 44 Mont. 492, 121 Pac. 283). But the mere fact that such a district is a public corporation created for the purpose stated does not necessarily exempt its property from taxation; if such property is to be exempted, it must be by virtue of the express pronouncement of the Constitution or legislative declaration permitted by the Constitution. (*Cook County* v. *Chicago*, 103 Ill. 646; *In re Swigert*, 123 Ill. 267, 14 N. E. 32.)

Our constitutional provision on exemption of property from taxation (sec. 2, Art. XII) declares an exemption as to two classes of property, based upon ownership: First, ''the property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries, * * * '' that is, public property; as to this class the provision is self-executing and mandatory. Second, ''such other property as may be used exclusively for the agricultural and horticultural societies, for educational purposes, places for actual religious worship, hospitals and places of burial not used or held for private or corporate profit, institutions of purely public charity * * * ''; as to these the provision is permissive and requires legislative action. (*Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878.)

It will be noted that ''public corporations'' are included in neither of these classes, unless, as contended by counsel for the plaintiff, irrigation districts, as public corporations, fall within the designation ''municipal corporations,'' or are such component parts of the state that it may be said that their property is the property of the state. The very fact that the

framers of our Constitution wrote into the fundamental law an exemption of the public property enumerated is recognition of the principle that, without such exemption, it would be subject to taxation (*City of Kalispell* v. *School District,* 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742), and therefore the rule "*expressio unius est exclusio alterius*" applies.

It must be conceded that our legislative policy is to exact contribution for the support of the government from all subjects within the taxing power; this power "is never presumed to be relinquished unless the intention to relinquish is expressed in clear and unambiguous terms," and "every claim for exemption from taxation should be denied unless the exemption is granted so clearly as to leave no room for any fair doubt." (*Cruse* v. *Fischl,* above.)

Provisions for exemptions must be construed strictly; nothing ▇▇▇ is to be implied (*Cruse* v. *Fischl,* above); this rule applies to exemptions of public as well as private property (*Sanitary District* v. *Gibbons,* 293 Ill. 519, 127 N. E. 691), and anyone seeking immunity from taxation must show that his property belongs to a class which is specifically exempted (*City of Kalispell* v. *School District,* above).

The ever-mounting expense of government requires vigilance on the part of governmental officers and agencies, to the end that all persons and all property receiving the benefit and protection of the government should contribute their just proportion of that expense to the end that the burden of taxation shall not become unduly heavy upon those unable to escape its exactions; no small part of this vigilance should be exerted to prevent the broadening of exemptions beyond the contemplation of the framers of our Constitution. It has been appropriately remarked that "there is nothing very poetical about tax laws. Wherever they find property, except what is devoted to public and charitable uses, they claim a contribution for its protection, without any special respect to the owner or his occupation, and without reflecting much on questions of generosity." (*Finley* v. *Philadelphia,* 32 Pa. 381.)

Where, then, does the property of an irrigation district fit into our constitutional provision so as to entitle it to exemption? It is neither the state, a county, city, or town (*Thaanum* v. *Bynum Irr. Dist.*, 72 Mont. 221, 232 Pac. 528), and, in that opinion, it is emphatically declared that such a district is not a "municipality," for the term is synonymous with "municipal corporation," "and in this state only incorporated cities and towns are municipal corporations (*Hersey* v. *Neilson*, 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30)."

However, while, technically speaking, the term "municipal corporation" can be applied only to incorporated cities and towns, the term has a broader meaning in common usage, and may, when the intention is clear to do so, be used to include counties, townships, parishes, boards of education, school districts, road, levee, and sanitary districts and the like, and even unincorporated towns and villages, "hence such expressions as 'municipal corporation—a city, county or town,' and 'a county, or any other municipal corporation.'" (1 McQuillin on Municipal Corporations, 2d ed., 392.)

From the use of the term "municipal corporations" in connection with the term "cities and towns," it is evident that the framers of the Constitution had in mind governmental agencies of some sort, other than cities and towns, as included within the term, and, in ascertaining the meaning of words in the Constitution, they will be presumed to have been used in the sense in which they were used generally at the time the Constitution was adopted (*State ex rel. Judith Basin County* v. *Poland*, 61 Mont. 600, 203 Pac. 352), unless the context in which they occur requires that they be assigned a different meaning, or other provisions on the same subject limit, qualify, or enlarge their scope (*State ex rel. Rowe* v. *Kehoe*, 49 Mont. 582, 144 Pac. 162).

Further, while we had no irrigation districts at the time of the adoption of the Constitution, and therefore it cannot be said that the framers had such public corporations in mind when they used the term "municipal corporations," the language of the Constitution must be taken as having been de-

signed to meet the needs of a progressive society, and should not be strictly confined to its meaning as understood at the time the instrument was adopted. (*State ex rel. Fenner* v. *Keating*, 53 Mont. 371, 163 Pac. 1156.)

But "a word or phrase may have different meanings as it is employed in different connections * * * and the particular meaning to be attached to it in a given statute or constitutional provision is to be measured and controlled by the connection in which it is employed, the evident purpose of the Act, and the subject to which it relates." '(*Thaanum* v. *Bynum Irr. Dist.*, above.)

The plaintiff district is entitled to have its property exempted only if, under the above rules, it can be said it clearly comes within the term "municipal corporations," or that it is such a subdivision, institution or department of the state as to constitute its property the property of the state, or that, under some appropriate designation, within the second class mentioned in the constitutional provision, its property has been exempted by statute.

Our attention has not been called to, nor have we found, any case holding that agricultural lands within an irrigation district are exempt from taxation by reason of the fact that title thereto has passed to the district, although certain of the decided cases in sister states indicate that the courts consider irrigation districts as so closely related to the state as to bring them within their constitutional exemption provisions. These decisions are, however, not controlling, and are only persuasive in so far as the provisions under consideration are similar to our own, and the reasoning employed appeals to us as sound.

The nearest approach to the case at bar seems to be *State ex rel. Caldwell* v. *Little River Drainage Dist.*, 291 Mo. 72, 236 S. W. 15, wherein it is held that a drainage district is a municipal corporation within the meaning of a constitutional provision similar to our own; that it must be assumed that the framers of the Constitution and the legislature never intended to tax the property of the state or public property of a

political subdivision thereof, and that, therefore, the property of a drainage district "used exclusively in the discharge of its prescribed governmental function, is exempt from taxation."

In *Gem Irr. Dist.* v. *Van Deusen* (1918), 31 Idaho, 779, 176 Pac. 887, it is held that an irrigation district is a municipal corporation within the meaning of a constitutional provision that "the legislature shall not impose taxes for the purpose of county, city, town or other municipal corporation"; and in *Storey & Fawcett* v. *Nampa Irr. Dist.* (1920), 32 Idaho, 713, 187 Pac. 946, it is held that such a district is a municipal corporation and its property public property, and therefore not subject to mechanics' liens and the foreclosure thereof. However, by an amendatory Act of 1915, Idaho has declared that irrigation districts are "municipal subdivisions of the state," and these decisions, promulgated after that year, may have been influenced by the declaration of the legislature, although the Act is not mentioned therein. On the other hand, under differing provisions the supreme court of Idaho has repeatedly held that an irrigation district is but a public corporation or quasi-municipal corporation. (*Pioneer Irr. Dist.* v. *Walker,* 20 Idaho, 605, 119 Pac. 304; *Colburn* v. *Wilson,* 23 Idaho, 337, 130 Pac. 381; *Little Willow Irr. Dist.* v. *Haynes,* 24 Idaho, 317, 133 Pac. 905.)

In Washington an irrigation district is declared to be a municipal corporation within the meaning of an Act making municipalities liable to those injured by contractors, when the officials have failed to require the giving of a bond (*Brown Bros.* v. *Columbia Irr. Dist.,* 82 Wash. 274, 144 Pac. 74), but in *Board of Directors* v. *Peterson,* 4 Wash. 147, 29 Pac. 995, it is held that an irrigation district is not a municipal corporation within the meaning of section 6, Article VIII, of the Constitution—limitation upon indebtedness "of cities, towns and other municipal corporations."

In Oregon it is held that an irrigation district is neither a municipal corporation nor a quasi-municipal corporation within the meaning of the constitutional provisions regarding the election of officers in such corporations. (*Board of Direc-*

*tors of Payette-Oregon Irr. Dist.* v. *Peterson,* 64 Or. 46, 128 Pac. 837, modified in 129 Pac. 123.)

In Nebraska it is held that irrigation districts organized under the laws adopted from California are public, rather than municipal, corporations, and their officers are public agents of the state. (*Alfalfa Irr. Dist.* v. *Collins,* 46 Neb. 411, 64 N. W. 1086.)

California has repeatedly held that an irrigation district is but a public corporation for municipal purposes, or a quasi-municipal corporation (see long list of cases cited in dissenting opinion), and finally held that such a corporation was not a municipal corporation within an amendment to the constitutional provision on exemptions withdrawing from exemption lands and improvements acquired by municipalities outside their corporate limits, but the court then held that such a district is such a subdivision of the state as to render its property exempt as state property. (*Turlock Irr. Dist.* v. *White,* 186 Cal. 183, 17 A. L. R. 72, 198 Pac. 1060.) The author of a note to this case in 17 A. L. R. 72 says: "While not all public corporations are municipal corporations, yet the terms seem sometimes to have been used as synonyms. Thus, in *Fallbrook Irr. Dist.* v. *Bradley* (1896), 164 U. S. 159, 41 L. Ed. 389, 17 Sup. Ct. Rep. 56, and *Tulare Irr. Dist.* v. *Shepard* (1902), 185 U. S. 13, 46 L. Ed. 779, 22 Sup. Ct. Rep. 531, it was stated that the California supreme court had held that irrigation districts were public municipal corporations [citing cases]. * * * An examination of these cases, however, will disclose that all the court held was that they were public corporations. It is probable that all that was meant in those cases was, as was held in the *Fallbrook Irrigation District Case,* that irrigation districts are public corporations organized for municipal purposes."

On this subject Judge Cooley in his work on Taxation says: "An express exemption of property of 'municipal corporations' applies only to municipal corporations proper and not to a corporation composed of shareholders which in its form and controlling features is a business enterprise upon which

municipal powers have been incidentally conferred in promotion of its primary purpose. It is also held that an irrigation district or a drainage district is not a municipal corporation within constitutional or statutory provisions exempting the property of municipal corporations." (2 Cooley on Taxation, 4th ed., sec. 623.) Such districts are more nearly akin to those corporations mentioned, the "controlling feature of which is a business enterprise," but with incidental municipal powers, than to either municipal corporations or quasi-municipal corporations, such as counties, school districts, and road districts.

It cannot be said that the term "municipal corporation" is used in any different sense in section 2, Article XII, above, than is its synonymous term "municipality" in section 1 of Article XIII, considered in *Thaanum* v. *Bynum Irrigation District,* above, and on this authority, and for the further reasons hereinafter given, we hold that the property of an irrigation district is not exempt from taxation under the specific provision exempting the property of municipal corporations.

Turning, then, to the further contentions of the plaintiff, we find that in 1909 the legislature, as a part of the Irrigation Code then adopted, declared that "the bonds issued under the provisions of this Act, rights-of-way, ditches, flumes, pipe-lines, dams, water-rights, reservoirs, and other property of like character, belonging to any irrigation district, shall not be taxed for state, county, or municipal purposes." (Sec. 39, Chap. 146, Laws of 1909, now section 7209, Rev. Codes 1921.) Of this section Mr. Justice Holloway, speaking for the court in *Crow Creek Irr. Dist.* v. *Crittenden,* 71 Mont. 66, 227 Pac. 63, had this to say: "Whether the legislature had the authority to declare such an exemption may be questioned, but no one can be in doubt that it was dealing with an irrigation district as a part of the state itself rather than as an enterprise fostered by the state," and it is there held that such a district is a subdivision of the state within the meaning of section 4893, Revised Codes of 1921, relieving subdivisions of the state from the payment of recording fees. But neither the statute nor

the opinion cited conveys the idea that an irrigation district is such an integral part of the state as to render its property exempt from taxation on the theory that it is in fact the property of the state; on the contrary, the enactment discloses the legislative intent that only such property of an irrigation district as is used for governmental purposes should be exempt, and further, had the legislature had in mind that the property of such a corporation came within the phrase ''property of * * * the state,'' that body would not have felt called upon :o enact the statute, for as to such property the constitutional provision is self-executing, and the decision questions the power of the legislature to exempt such property. But, whether that statute is valid or not, it cannot avail the plaintiff here, as the property in question is not included in the statutory exemption.

Again, in *Thaanum* v. *Bynum Irrigation District*, above, the author of the Crow Creek Irrigation district opinion, again speaking for this court, declared that an irrigation district is not a ''subdivision of the state'' within the meaning of section 1, Article XIII, of the Constitution, which declares that ''neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit * * * to any individual, association or corporation,'' for the reason that ''where general words follow particular and specific words, the former are limited in meaning to things of the same kind as those particularly enumerated,'' thus holding that, in this connection, an irrigation district is not even a corporation of the same kind as a municipality.

It would seem that, in order to come within the rule which will permit the court to consider the property of a public corporation the property of the state for the purpose of exemption from taxation, such corporation should be so closely engrafted upon the state as to in fact exercise governmental functions and be supported, directly or indirectly, by the state. Thus in *Auditor General* v. *Regents of the University of Michigan*, 83 Mich. 467, 10 L. R. A. 376, 47 N. W. 440, it is said: ''The exemption of state property extends to the property of

all public departments of the state even though the title is in a board of trustees or a separate corporation." The opinion leaves no room for doubt as to the class of state institutions which fall within the rule announced; they are described as the state university, the agricultural college, normal schools, reform schools, and schools for deficients, state prisons and asylums, and such other like institutions as are "supported by the state through taxation or by funds or property appropriated by public or private generosity for that purpose." The reason given for so holding is that "it cannot be supposed that the legislature would make large appropriations * * * or levy taxes for the same purpose, and then assess the property held * * * in trust to carry out the same object for which such taxes are levied." Therein is expressed, in our opinion, the reason for the exemptions made in section 2, Article XII, above; no taxing power of the state shall levy taxes against the state or those subdivisions or departments thereof supported by the state or the people thereof, who are the state, as such procedure would be, in common parlance, the taking of money from one pocket and placing it in the other, and, as a matter of grace, those institutions not operated as a means of profit or gain, supported by public or private charity, are, or may be, relieved of the burden of taxation.

An irrigation district is neither supported by appropriation of public funds, by taxation, or by private donation. True, funds for the maintenance and operation of the district are raised by assessments levied against the property within the district, but these levies are in the nature of special assessments for local improvements (*In re Valley Center Drain District*, 64 Mont. 545, 211 Pac. 218), entirely distinct from general taxes for state, county, school district and municipal purposes (*Lainhart* v. *Catts*, 73 Fla. 735, 75 South. 47); they may even be levied against public property in spite of the constitutional exemption (*State ex rel. City of Great Falls* v. *Jeffries*, 83 Mont. 111, 270 Pac. 638; *City of Kalispell* v. *School District*, above); and no part of the revenue derived therefrom

reaches the coffers of the state or its political subdivisions organized for governmental purposes.

Further, while it is declared that irrigation districts are created to promote the welfare of the state, the state as a whole, the counties and school districts within which such districts may lie are benefited only incidentally, by reason of the increased valuations placed on the lands within the districts because of the special improvements made thereon and the increased prosperity of the owners of the land. The direct benefit accrues to the land improved and the owners thereof. (*Board of Directors of Payette Oregon Irrigation District* v. *Peterson,* above.) Irrigation districts are not created with a view to benefit the state or to organize a corporation for the discharge of governmental functions in addition to, or in aid of, the usual governmental departments or agencies, but in order to promote the material prosperity of the few owning property within their boundaries just as truly as are manufacturing plants established or mines and oil-wells developed. In so far as each of these projects bring into being new sources of revenue to the state, they promote the welfare of the state, but the mere production of additional values or property does not, in itself, warrant the exemption of the property from taxation, so long as that production is accomplished for private gain.

The Irrigation District Law does not contemplate that the district shall acquire the lands within its borders; the purpose of the Act is to enable the private owners of arid lands to acquire water for its irrigation, and thus promote the welfare of the individuals and of the state. If, by reason of the misfortune of the individual, a district is called upon to secure a tax deed to lands within the district in order to protect the district and its bonds, we see no reason why, within the purposes of the Irrigation District Law or the constitutional exemptions, that property should be withdrawn from the tax-rolls and the state, the county, and the school district be thus deprived of a substantial portion of their revenues.

It is within the realm of possibility that the affairs of an irrigation district may be so conducted that a large portion, or all, of the lands within the district should be acquired by the district by tax deed, as was the land in question; these lands might thereafter be operated by the district through the agency of croppers or leasers, and, if plaintiff's position were tenable, the entire district be thus relieved of paying its just proportion of the expense of the government which has rendered its existence possible and continues to protect its property at the expense of the people at large.

Plaintiff contends that the property in question should be ▮▮▮ exempt from taxation, for the reason that it is without power to raise or expend money for the purpose of paying the tax. The same argument was made in *Nutwood District* v. *Board of Review*, 255 Ill. 447, 99 N. E. 590, and was answered as follows: "The power to levy assessments for the payment of this tax is necessarily implied in the statute authorizing the creation of the district, and it will not be necessary, as appellant suggests, that a special levy be made each year for the payment of this tax, as it may be included within the annual levy made for the maintenance of the district." Likewise our provision respecting the raising of revenue for the maintenance and operation of irrigation districts (sec. 7235, as amended by Chap. 157, Laws 1923) is sufficiently broad to enable the plaintiff to meet the exactions of the taxing power of the state.

For the reasons stated, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.